DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GEORGETA MILLER,**
Appellant,

v.

**FINIZIO & FINIZIO, P.A.,** a Florida professional association, **PAUL G. FINIZIO** and **ANYA E. MACIAS,**
Appellees.

Nos. 4D15-4649 and 4D16-831

[ August 23, 2017 ]

Consolidated appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol Lisa Phillips, Judge; L.T. Case No. 09005292 (09).

Georgeta Miller, Weston, pro se.

Scott A. Cole and Lissette Gonzalez of Cole, Scott & Kissane, P.A., Miami, for appellees.

TAYLOR, J.

In this legal malpractice action arising out of divorce litigation, the plaintiff, Georgeta Miller, appeals an amended final judgment on the pleadings entered in favor of the defendants, Finizio & Finizio, P.A., Paul Finizio, and Anya Macias. We reverse.

### *Background and Underlying Dissolution Proceeding*

This legal malpractice action has its genesis in a marital dissolution proceeding between the plaintiff and her former husband. The defendants, Finizio & Finizio, P.A., Paul Finizio, and Anya Macias, represented the plaintiff in the dissolution proceeding.

In November 2006, the plaintiff entered into a marital settlement agreement with her husband, which largely dealt with custody and child support issues with respect to the parties' two minor children.

At the final hearing in the dissolution action, the parties announced

that they had reached an agreement on all the issues in the case. The parties agreed that: (1) the plaintiff would pay $60,000 to the trust account of the husband's lawyer in exchange for a quitclaim deed to the marital home; (2) both parties would waive alimony; and (3) everything else would be covered by the marital settlement agreement. The plaintiff stated under oath that she agreed to be bound by the marital settlement agreement and by the terms that her lawyer announced on the record.

In January 2007, the family court entered a final judgment of dissolution of marriage, incorporating the terms of the written marital settlement agreement as well as the terms of the agreement announced in open court.

### *The Legal Malpractice Action*

In January 2009, the plaintiff, through counsel, filed a legal malpractice action against the defendants stemming from their representation of her in the dissolution action. The plaintiff alleged that the defendants violated the standard of care in numerous ways, including, among other things: (1) failing to obtain the required financial disclosures from the husband; and (2) informing the plaintiff that she could just sign the marital settlement agreement, and that the plaintiff and her counsel would pursue the financial disclosures and equitable distribution at a later date. The plaintiff further alleged that as a result of the defendants' violations of the standard of care, she was damaged in that she relied upon the defendants' advice and signed a highly disadvantageous agreement, resulting in a final judgment with much less favorable terms than would have otherwise been the case.

The defendants filed an Answer and Affirmative Defenses, which they later amended.

After the defendants filed their original answer, the plaintiff's counsel withdrew from the case and the plaintiff began representing herself.

The legal malpractice case was later abated while the plaintiff pursued multiple unsuccessful motions to vacate the final judgment of dissolution of marriage under Florida Rule of Civil Procedure 1.540(b).

After the legal malpractice case was reopened, the defendants eventually filed an Amended Motion for Judgment on the Pleadings, arguing that: (1) because the plaintiff knowingly and voluntarily entered into the martial settlement agreement, her legal malpractice action was improper; and (2) the plaintiff could not prove redressable harm because

2

the marital settlement agreement is always subject to modification in the family court based on changed circumstances.

Following a hearing, the trial court granted the Amended Motion for Judgment on the Pleadings. This appeal ensued.[1]

### *Parties' Arguments*

On appeal, the plaintiff argues, in relevant part, that her legal malpractice suit was not barred by the marital settlement agreement incorporated in the final dissolution judgment, that she suffered redressable harm, and that the trial court erred in entering judgment on the pleadings.

In response, the defendants argue that: (1) the plaintiff's knowing and voluntary entry into the marital settlement agreement is a bar to her legal malpractice action; and (2) the legal malpractice action is improper because the marital settlement agreement is always subject to modification in the family court.

### *Standard of Review*

The standard of review applicable to a judgment on the pleadings is de novo. *Lutz v. Protective Life Ins. Co.*, 951 So. 2d 884, 887 (Fla. 4th DCA 2007). "The purpose of a motion for judgment on the pleadings is to test the legal sufficiency of a cause of action or defense where there is no dispute as to the facts." *Barentine v. Clements*, 328 So. 2d 878, 879 (Fla. 2d DCA 1976). A motion for judgment on the pleadings "is similar to a motion to dismiss and raises only questions of law arising out of the pleadings." *Venditti-Siravo, Inc. v. City of Hollywood, Fla.*, 418 So. 2d 1251, 1253 (Fla. 4th DCA 1982). Where a defendant moves for judgment on the pleadings, a court must take as true all of the material allegations in the plaintiff's complaint and must disregard all of the denials in the defendant's answer. *Lutz*, 951 So. 2d at 887.

### *Legal Analysis*

"A cause of action for legal malpractice has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and

---

[1] Later, in compliance with this court's order authorizing the trial court to enter a final order, the trial court entered both a Final Judgment on the Pleadings and an Amended Final Judgment on the Pleadings.

3

(3) the attorney's negligence was the proximate cause of loss to the client." *R.S.B. Ventures, Inc. v. Berlowitz*, 211 So. 3d 259, 263 (Fla. 4th DCA 2017).

The proposition that a lawyer may be held liable for malpractice in connection with "a case that was ultimately settled by the client, whether based on deficiencies in preparation that prejudiced the case and more or less required a settlement or on a negligent evaluation of the client's case, has been accepted by nearly every court that has faced the issue." *Thomas v. Bethea*, 351 Md. 513, 527, 718 A.2d 1187, 1194 (1998).

Florida courts are no exception. Under Florida law, a client's mere acceptance of a settlement in a prior case does not automatically foreclose the client from bringing a malpractice suit against the attorney who handled the case. *Keramati v. Schackow*, 553 So. 2d 741, 745-46 (Fla. 5th DCA 1989). A client's agreement to settle a case does not, as a matter of law, negate "any alleged legal malpractice as a proximate cause of loss." *Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A.*, 555 So. 2d 455, 456 (Fla. 2d DCA 1990). Instead, "[t]his is a matter of proof for trial." *Id.*

To establish proximate causation for legal malpractice arising out of a settlement, the client must demonstrate that there is an amount of damages which he or she would have recovered but for the lawyer's negligence. *Tarleton v. Arnstein & Lehr*, 719 So. 2d 325, 328–30 (Fla. 4th DCA 1998).

Here, the plaintiff's complaint undoubtedly alleged each element of a cause of action for legal malpractice. Therefore, we must decide whether the plaintiff's claim is otherwise barred for any of the reasons asserted by the defendants.

Contrary to the defendants' first argument, the plaintiff's voluntary acceptance of the marital settlement agreement does not bar her legal malpractice action as a matter of law. An attorney is not "insulated from liability for failing to exercise ordinary skill and care in resolving settlement issues." *Sauer v. Flanagan & Maniotis, P.A.*, 748 So. 2d 1079, 1082 (Fla. 4th DCA 2000). Likewise, a client cannot be faulted "for relying on an attorney's erroneous legal advice or for failing to correct errors of the attorney which involve the exercise of professional expertise." *Tarleton*, 719 So. 2d at 331. Accordingly, the defendants' first argument flies in the face of well-settled principles of Florida law.[2]

---

[2] Nor is this a case where the plaintiff abandoned the malpractice claim by settling the underlying lawsuit. *See Coble v. Aronson*, 647 So. 2d 968, 970 (Fla. 4th DCA 1994) (explaining that "[o]ccasionally, where the allegations involve attorney

4

The defendants rely primarily on *George v. Cigna Insurance Co.*, 691 So. 2d 1209 (Fla. 3d DCA 1997), in support of their contention that "where a client confirms the settlement of a claim, the client cannot then sue for legal malpractice." However, *George* does not stand for such a broad proposition.

In *George*, the client sued his former lawyers for legal malpractice for settling a lawsuit without his consent, but the client had previously told his lawyers that he had "no objection" to the proposed letter that ultimately settled the case. *Id.* at 1211–12. The appellate court affirmed summary judgment in favor of the lawyers on the malpractice claim, reasoning that, "[h]aving given consent, it is too late for [the client] to change position now." *Id.* at 1212. Thus, *George* stands for the unremarkable proposition that a client who consents to a settlement is barred from bringing a legal malpractice claim on the theory that his attorneys settled the lawsuit without his consent.

Nothing in *George* states that a client's consent to a settlement bars a legal malpractice claim where the basis for the malpractice claim is the lawyer's deficient preparation or misadvice leading up to the settlement. The malpractice allegation in this case is markedly different from the malpractice allegation in *George*. Here, the plaintiff is not alleging that she did not consent to the settlement of the underlying case, but rather is alleging that the defendants' breach of the standard of care resulted in a disadvantageous settlement. Therefore, *George* is distinguishable.

The defendants' alternative argument—that the plaintiff cannot show redressable harm because the marital settlement agreement is always subject to modification in family court—is also without merit. The defendants' argument is inconsistent with Florida's bright-line rule on accrual of legal malpractice claims.

Redressable harm for legal malpractice arising out of litigation occurs

---

errors during litigation, redressable harm can only be determined upon completion of the appellate process, and therefore, the settlement of the underlying litigation will defeat any potential cause of action for attorney malpractice"). Here, the settlement of the underlying litigation did not thwart any appellate review process which could have cured the alleged malpractice. *See Parker v. Graham & James*, 715 So. 2d 1047, 1048 (Fla. 3d DCA 1998) (rejecting the argument that the plaintiffs abandoned their malpractice claim by settling the underlying claim, as "the settlement did *not* thwart any review process which could have cured the malpractice").

when "the litigation is concluded by final judgment" and "the final judgment becomes final." *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998). "[A] judgment becomes final either upon the expiration of the time for filing an appeal or postjudgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing." *Id.* at 1175 n.2.

The rule of *Silvestrone*, however, "merely establishes a bright line for establishing when the client has suffered *some* loss as a consequence of the attorney's negligence." *Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 42 (Fla. 2009) (plurality opinion). This bright-line rule "does not require that there be a determination of the *full extent* of all losses suffered by the client due to the lawyer's negligence." *Id.*

Here, under the bright-line rule of *Silverstrone*, the plaintiff's legal malpractice claim has accrued because the underlying dissolution litigation has been concluded by final judgment. The dissolution judgment is final within the meaning of *Silverstrone* because the time for filing an appeal or postjudgment motions has expired. The defendants' argument to the contrary is unworkable in practice and would create uncertainty as to when legal malpractice claims accrue in the family law context.

The hypothetical possibility of obtaining a modification of the dissolution judgment does not change the fact that redressable harm occurred at the moment the dissolution judgment became final. When the dissolution judgment became final, the plaintiff allegedly suffered *some* loss as a result of the defendants' alleged malpractice. Moreover, in this case, some portions of the dissolution judgment were non-modifiable, including the alimony waiver and the property settlement. Put simply, while the possibility of obtaining a modification of the dissolution judgment based on a change in circumstances may be relevant to determining the *amount* of damages, it does not affect when the legal malpractice claim accrued. For all of the foregoing reasons, the plaintiff's legal malpractice claim is not premature.

In sum, the plaintiff's complaint alleged each of the elements of a legal malpractice claim, her voluntary acceptance of a settlement in the underlying dissolution case did not bar her legal malpractice claim, and her legal malpractice claim was not premature. We reverse and remand for further proceedings.

*Reversed and Remanded.*

DAMOORGIAN and KUNTZ, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***